IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**MARTIN J. WALSH,** Secretary of Labor,  )
United States Department of Labor,          )
                                            )
            Plaintiff,                      )
                                            )
       v.                                   )          2:20cv732
                                            )          **Electronic Filing**
**IDEAL HOMECARE AGENCY, LLC,**             )
**MADHAV DHITAL,**                          )
                                            )
            Defendants.                     )

## OPINION

    The Secretary of Labor ("Secretary" or "plaintiff") commenced this enforcement action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq* ("FLSA"), seeking back wages, liquidated damages and injunctive relief in conjunction with numerous employees of defendants Ideal Homecare, LLC, and Madhav Dhital ("Ideal Homecare" and/or "defendants"). Presently before the court is defendants' motion for judgment on the pleadings. For the reasons set forth below, the motion will be denied.

    A party may move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) when the pleadings clearly show that no material issue of fact exists and that it is entitled to judgment as a matter of law. Rosenau v. Uniford Corp., 539 F.3d 218, 221 (3d Cir. 2008) (citing Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)). In reviewing such a motion, the court must view the facts in the pleadings and the inferences therefrom in a light most favorable to the non-moving party. Id. "A motion for judgment on the pleadings, like a motion to dismiss, will be granted if the plaintiff has not articulated enough facts to 'raise a right to relief above the speculative level.'" Bangura v. City of Phila., 338 Fed. Appx. 261, 264 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Stating a claim does not require a plaintiff to plead the factual evidence needed to prove entitlement to relief.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 212-13 (3d Cir. 2009) ("It is axiomatic that the standards for dismissing claims under Federal Rule of Civil Procedure 12(b)(6) and granting judgment under either Federal Rule of Civil Procedure 50 or Federal Rule of Civil Procedure 56 are vastly different.").  Nor does it require the plaintiff to meet a quantum of proof.  Id.  It is sufficient to plead enough factual matter that when taken as true and considered in conjunction with all reasonable inferences drawn therefrom "set forth sufficient facts to support plausible claims."  Id. at 212.

Once a complaint has adequately stated a claim, that claim "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8; Fowler, 578 F.3d at 212 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely.") (quoting Twombly, 550 U.S. at 556).  In other words, "the breadth of opportunity to prove what an adequate complaint claims" is not limited only to the specific facts articulated in the stated claim.  Twombly, 550 U.S. at 563.

The Secretary avers that Ideal Homecare is an enterprise engaged in the health care business with gross revenue of not less than $500,000.00.  Complaint (Doc. No. 1) at ¶¶ 2, 5. Ideal Homecare, through and at the direction of Madhav Dhital (its owner and president), employs "persons in domestic service for profit."  Id. at ¶¶ 3, 5.  These "employees provide in-home healthcare services" to Ideal Homecare's clients.  Id. at ¶ 5.  These employees have engaged in workweeks longer than 40 hours without being compensated at rates of at least time and a half for all hours worked over 40.  Id. at ¶ 6.  "For example, during the time period from at

2

least December 24, 2016, through at least December 15, 2018, Defendants failed to compensate certain of their employees employed as caregivers who worked over 40 hours in a workweek hours at rates not less than one and one-half times their regular rates." Id. at ¶ 7.  Many of these employees worked between 50 and 90 hours per week during this time.  Id.  And even when defendants began "paying some caregivers the proper overtime premium, they continued paying others straight time for overtime."  Id.

The Secretary further alleges that defendants failed to make, keep and preserve adequate payroll records.  Id. at ¶ 8.  In addition to the failure to keep required personal employee information and accurate wage earning data, defendants' utilization of straight time for overtime resulted in a failure to record the data needed to compute overtime premium pay.  Id. at ¶ 9.  They "also failed to keep accurate records of amounts due to employees for time spent traveling between clients' homes."  Id.

Defendants' seek judgment on the grounds that plaintiffs' claims are predicated on the "narrow construction" principle previously utilized in construing exemptions under the FLSA and the Supreme Court unequivocally rejected the use of that standard in Encino Motorcars, LLC v. Navarro, -- U.S. --, 138 S. Ct. 1134 (2018) ("Encino II").  Prior to 2015, the applicable regulations and the corresponding exemptions in the FLSA treated Ideal Homecare's employees as exempt from the FLSA's overtime requirements.   The Department of Labor ("DOL") changed these regulations in 2015.  But the resulting impact of Encino II jettisons the Secretary's ability to invoke the DOL's 2015 Domestic Service Rule, now reflected at 29 C.F.R. § 552.109 ("2015 Rule"), which removes third-party employers from the scope of the domestic service exemption.  And as a consequence, defendants posit that Ideal Homecare's domestic service workers remain exempt under the companionship and live-in exemptions in the FLSA and judgment to this effect is warranted as a matter of law.

3

Plaintiff maintains that defendants' motion is predicated on unwarranted extrapolations in construing the allegations of the complaint and attempts to flip the applicable pleading standards and require plaintiff to plead facts to defeat an affirmative defense that is based on exemptions in the FLSA.  Even without the benefit of the 2015 Rule, many of Ideal Homecare's employees assertedly would remain within the scope of the FLSA's protections and factual issues would remain as to others.  Further, from the Secretary's perspective Encino II does not invalidate the 2015 Rule or the prior precedent upholding it as a valid exercise of the Secretary's gap-filling authority under the FLSA.  And defendants have failed to provide an meaningful analysis as to how the "fair reading" interpretive principle announced in Encino II would invalidate the 2015 Rule; and, at the very least, this interpretive principle does not give defendants a license to construe the exemptions in any expansive manner that fits their litigation strategy.  Thus, plaintiff contends that the explanations for the DOL's change of position in the 2015 Rule easily pass muster under the controlling standards of review and as a result the employees at issue cannot be exempt under the companionship and/or live-in exemptions; and material issues of fact as to the duties of the employees and their work activities preclude the relief defendants seek in any event.

Defendants' motion is misplaced for three basic reasons.  First, defendants' motion is predicated on unwarranted inferences and extrapolations drawn from the averments of the Secretary's complaint.  It has long been settled that a plaintiff is not required to plead the absence of an affirmative defense in setting forth a claim under Federal Rule of Civil Procedure 8(a). Schmidt v. Skolas, 770 F.3d 241, 251 (3d Cir. 2014) ("a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense.") (citing In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004); Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir.2003) ("[L]itigants need not try to plead around defenses")); and Oshiver v. Levin, Fishbein,

4

<u>Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994).  Instead, Rule 8(c) allocates the burden of raising an affirmative defense to the defendant through the filing of an answer. <u>Robinson v. Johnson</u>, 313 F.3d 128, 134-35 (3d Cir. 2002).  However, under the so-called "Third Circuit Rule," an affirmative defense may be considered and granted pursuant to a motion to dismiss, but only if the defense conclusively is established on the face of the complaint.  <u>Id.</u>  If it is not, then the defense may not be used to end the litigation at the pleading stage.  <u>Id.</u> (citing <u>Bethal v. Jendoco Construction Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978)).

Defendants' efforts to interject a defense under the companionship exemption are nothing short of Herculean.  But a straightforward reading of the Secretary's allegations falls far short of placing Ideal Homecare's employees conclusively within the "companionship" and/or live-in exemptions to domestic services work.  To the contrary, the averments state that Ideal Healthcare employs "persons in domestic service for profit"  and these "employees provide in-home healthcare services" to Ideal Homecare's clients.  Providing domestic services in the form of in-home healthcare services does not conclusively identify work that falls within a legally established definition of "companionship" services or even a definition that draws upon the plain meaning of the terms involved.  Because the allegations of the complaint fail to establish that the employees in question fall exclusively within the companionship or live-in exclusions to the FLSA's provisions governing domestic service, defendants' efforts to extricate themselves through an affirmative defense is unavailing.

Second, defendants' reliance on the teachings of <u>Encino II</u> to invalidate the 2015 Rule are misguided.  <u>Encino II</u> did hold that the longstanding principle that exemptions to the FLSA should be construed narrowly in order to advance the statute's remedial purpose did not enjoy "textual" support in the FLSA and, given the number and prominence of exemptions within the

statutory framework, the courts have "no license to give the exemption[s] anything but a fair reading." <u>Encino II</u>, 138 S. Ct at 1142.

But in reaching that holding, the <u>Encino II</u> Court did not overrule the longstanding principles governing judicial review of agency action undertaken pursuant to delegated authorization expressly granted by statute. To the contrary, a review of the full history of the case confirms that the Court unequivocally left this firmly established body of law intact.

<u>Encino II</u> was decided in the context of the DOL reversing its longstanding position on whether automobile dealership "service advisors" were exempt from the overtime-pay requirements of the FLSA under the "salesman, partsman or mechanic" exemption. After over thirty years of treating such employees as exempt, the DOL reversed its position 2011 and removed service advisors from the scope of the exemption. But it did so in a defective manner.

In <u>Encino Motorcars, LLC v. Navarro</u>, -- U.S. --, 136 S. Ct. 2117 (2016) ("<u>Encino I</u>"), the Court considered the appropriate level of deference to be accorded to the 2011 DOL regulation that removed service advisors from the scope of the statutory exemption at 29 U.S.C. 213(b)(10)(A). The Court explained that as a general matter, when an agency is authorized by Congress to issue regulations and the agency promulgates a regulation interpreting the statutory provisions which it is charged to enforce, the agency's interpretation receives judicial deference if the statute is ambiguous and the agency's interpretation is reasonable. <u>Id.</u> at 2124 (citing <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984)). "This principle is implemented by the two-step analysis set forth in <u>Chevron</u>." <u>Id.</u> The first inquiry is "whether Congress has 'directly spoken to the precise question at issue.'" <u>Id.</u> (quoting <u>Chevron</u>, 467 U.S. at 842. If it has, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 2125

6

(quoting Chevron, 467 U.S. at 842-43).  "If not, then at the second step the court must defer to the agency's interpretation if it is 'reasonable.'"  Id. (quoting Chevron, 467 U.S. at 844).

An underlying principle of "Chevron is that when Congress grants an agency the authority to administer a statute by issuing regulations with the force of law, it presumes the agency will use that authority to resolve ambiguities in the statutory scheme."  Id. (citing Chevron, 467 U.S. at 843-44 and United States v. Mead Corp., 533 U.S. 218, 229-230 (2001)).  When the agency is authorized "to proceed through notice-and-comment rulemaking, that 'relatively formal administrative procedure' is a 'very good indicator' that Congress intended the regulation to carry the force of law, so Chevron should apply."  Id. (quoting Mead Corp., 533 U.S. at 229-30).  But where the regulation is "'procedurally defective' - that is, where the agency errs by failing to follow the correct procedures in issuing the regulation," then "Chevron deference is not warranted."  Id. (quoting Mead Corp., 533 U.S. at 227 and citing Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 174-176 (2007) (rejecting challenge to procedures by which regulation was issued and affording Chevron deference)).  Where an agency regulation is properly challenged and the procedures utilized by the agency were defective, Chevron deference to the agency interpretation is unwarranted.

One of the fundamental tenants of administrative rulemaking is that an agency must give adequate reasons for its decisions.  In this regard "the agency 'must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  Encino I, 136 S. Ct. at 2125 (quoting Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983)).  This tenant will be satisfied where "the agency's explanation is clear enough that its 'path may reasonably be discerned.'"  Id. (quoting Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc., 419 U.S. 281, 286 (1974).  "But where the agency has failed to provide even that minimal

7

level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." Id. (citing 5 U.S.C. § 706(2)(A) and State Farm, 463 U.S. at 42-3).

The 2011 regulation was issued without a reasoned explanation sufficient to engender Chevron deference. Id. at 2126. "In promulgating the 2011 regulation, the Department offered barely any explanation." Id. While a summary may at times suffice, the summary explanation provided by the DOL "fell short of the agency's duty to explain why it deemed it necessary to overrule its previous position," which was particularly appropriate given the "decades of industry reliance on the Department's prior policy." Id. The DOL's failure to provide an explanation against the backdrop of the significant, longstanding reliance on its prior opposite position precluded the 2011 regulation from receiving Chevron deference in the process of interpreting the statutory exemption at issue. Encino I, 136 S. Ct. at 2127.[1]

Because the United States Court of Appeals for the Ninth Circuit erroneously had accorded Chevron deference to the 2011 rule, the Encino I Court remanded the case to "the

---

[1] Of course, agencies can change their existing policies when they provide a reasoned explanation for the change. Id. (citing National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U.S. 967, 981-82 (2005) and Chevron, 467 U.S. at 863-64). When they do so, they "need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." Id. at 2125-26 (citing FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009)). But in changing positions, an agency at the very least the must "display [an] awareness that it is changing position" and "show that there are good reasons for the new policy." Id. (citing Fox Television Stations, 556 U.S. at 515). There must be at least a cognizant recognition that its "longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" Id. (citing Fox Television Stations, 556 U.S. at 515 and Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 742 (1996). "In such cases it is not that further justification is demanded by the mere fact of policy change; but that a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." Id. (quoting Fox Television Stations, 556 U.S. at 515-16. Where such an "[u]nexplained inconsistency" in agency policy occurs, the resulting interpretation may be held "be an arbitrary and capricious change from agency practice." Id. (quoting Brand X, 545 U.S. at 981). "An arbitrary and capricious regulation of this sort is itself unlawful and receives no Chevron deference." Id. (quoting Mead Corp., 533 U.S. at 227).

Court of Appeals to interpret the [statutory exemption] in the first instance." Id.  On remand, the Ninth Circuit held that that service advisors were outside the statutory exemption.  In doing so it utilized an Occupational Outlook Handbook, the distributive cannon of statutory construction and the principle that exemptions to the FLSA should be construed narrowly in order to further the statute's remedial purpose.  Encino II, 138 S. Ct. at 1139, 1143.  It was in this setting that the Court discarded the established principle that exemptions to the FLSA are to receive narrow construction and announced the replacement principle that exemptions in the FLSA are to be given "a fair reading."  Id. at 1142.

An essential premise of defendants' position that judgment as a matter of law in its favor is appropriate is the contention that the 2015 Rule is not entitled to Chevron deference. Defendants highlight that the 2015 Rule removed third-party employers from the scope the statutory exemption, which was a reversal of the DOL's longstanding prior policy.  The DOL also promulgated the 2015 Rule against the backdrop of the narrow construction principle, and referenced that principle in the course of providing its justification during the rulemaking process.  But these consistencies with the defunct 2011 Rule do not provide defendants with an unassailable defense to the Secretary's enforcement action.

Encino II does not establish the principle that all prior DOL regulations that were promulgated with reference to or under the auspices of the narrow construction rule are now forms of arbitrary and capricious agency action that are to be stripped of Chevron deference. The Court announced no such rule and, more importantly, it did not disturb at any point the extensive body of administrative law that has emerged from Chevron and its progeny.  It was only after applying this body of law in Encino I and reaching the conclusion that the 2011 rule was the product of arbitrary and capricious rulemaking that the Court established the "fair reading" principle in the context of a judicial statutory interpretation.  It follows that the DOL's

promulgation of a rule under the framework of the FLSA through the formal notice-and-comment rulemaking process is not rendered arbitrary and thus unlawful merely because the rule was established during the nearly seven decades that the narrow construction principle reflected the law of the land.

Encino II likewise does not establish that all previous agency rulemaking is rendered arbitrary and thus unlawful simply because arguments can now be advanced that the agency policy is inconsistent with a perceived construction of the statute under a "fair reading" approach.  Something far beyond the Court's holdings in Encino I and Encino II would be needed to justify such an approach.  Suffice it to say that defendants here have not identified any such authority.

The Secretary stands ready to establish that the 2015 Rule properly is to be given Chevron deference and both the third-party employer and the definitional components of companionship and live-in exemptions are entitled to be treated as having the force of law.  He notes that in Long Island Care at Home the Court unanimously recognized and confirmed the substantial breadth of congressionally delegated authority given to the Secretary in the very area that the 2015 Rule addresses, 551 U.S. at 167-8; and in Home Care Assoc. of America et. al v. Weil, the United States Court of Appeals for the District of Columbia thoroughly considered the validity of the 2015 Rule and found it to be a reasonable interpretation of the statute that carries the force of law, notwithstanding that it was a departure from past practice, 799 F.3d 1084, 1095-96 (D.C. Cir. 2015).  And while defendants strive to pin Ideal Homecare's employees exclusively under the protective umbrella of companionship and live-in care, they have neither conclusively precluded the Secretary's ability to invoke Chevron deference nor established as a matter of law that the employees are limited to forms of domestic service work that can only be

recognized as exempt.  It follows that rendering judgment on the pleadings would be

inappropriate.

   For the reasons set forth above, defendants' motion for judgment on the pleadings will be

denied.  An appropriate order will follow.

<u>Date: September 28, 2021</u>

               <u>s/ David Stewart Cercone</u>
               David Stewart Cercone
               Senior United States District Judge

cc:  Maria del Pilar Castillo, Esquire
   Ethan Dennis, Esquire
   Dane Steffenson, Esquire
   Angelo Spinola, Esquire

   *(Via CM/ECF Electronic Mail)*

11